18-3622 (L)
United States v. Little

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of September, two thousand twenty.

PRESENT:
  **DENNIS JACOBS,**
  **GERARD E. LYNCH,**
  **MICHAEL H. PARK,**
      *Circuit Judges.*
_____

**United States of America,**

            *Appellee*,

      **v.**                                                **No. 18-3622-cr**
                                                           **No. 19-445-cr**

**Michael J. Little, AKA Sealed Defendant 1,**

            *Defendant-Appellant.*
_____

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | ROBERT A. CULP, Law Office of Robert A. Culp, Garrison, NY *for* Michael J. Little |
| **FOR APPELLEE:** | DINA MCLEOD, Assistant United States Attorney (Christopher J. DiMase, Andrew S. Dember, Anna M. Skotko, Assistant United States Attorneys, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Castel, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**, except that the order of restitution is **AFFIRMED IN PART**, **VACATED IN PART**, and **REMANDED** for further proceedings.

Michael J. Little appeals from the judgment of conviction on nineteen counts arising from a scheme to conceal assets from the Internal Revenue Service. After the death of Harry Seggerman in 2001, Little and a foreign associate gathered millions of dollars held in Seggerman's undisclosed offshore accounts and placed them in a Swiss trust called Lixam Proviso. Little then helped transfer the Lixam assets under the guise of gifts or loans to Seggerman's surviving spouse and children. He was paid about half-a-million dollars for his role.

In connection with that scheme, Little was charged and found guilty on one count of corruptly impeding the administration of the IRS, 26 U.S.C. § 7212(a); one count of conspiracy to defraud the United States, 18 U.S.C. § 371; and ten counts of willfully assisting in the filing of false Forms 3520 (Annual Return to Report Transactions with Foreign Trusts and Receipt of Certain Foreign Gifts), 26 U.S.C. § 7206(2). Little was also convicted on additional counts relating to his failure to file his own tax returns or Report of Foreign Bank and Financial Accounts ("FBAR"). He was sentenced to twenty months' imprisonment and a one-year term of supervised release. He was further ordered to pay $4,352,889.71 to the United States in restitution, an order from which he also now appeals. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

2

### 1. Constructive Amendment of the Indictment

Little first argues that discrepancies between the indictment and the jury instructions on the conspiracy count rise to the level of a constructive amendment of the indictment and thereby violate the Fifth Amendment's Grand Jury Clause. Although the indictment described the third object of the conspiracy as assisting the preparation of fraudulent Forms 1040 (income tax returns) or Forms 706 (estate tax return), the jury instructions stated that "the third object is going to be charged separately in Counts Ten through Nineteen," the counts for assisting the preparation of fraudulent Forms 3520. The district court further directed the jurors that they "should apply the instructions for Counts Ten through Nineteen when considering whether the government proved this third object of the conspiracy."

Because Little raises his claim of constructive amendment for the first time on appeal, we review it for plain error. *See United States v. Bastian*, 770 F.3d 212, 219 (2d Cir. 2014). "To prevail on a constructive amendment claim, a defendant must demonstrate that 'the terms of the indictment are in effect altered by the presentation of evidence and jury instructions which so modify *essential elements* of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment.'" *United States v. D'Amelio*, 683 F.3d 412, 416 (2d Cir. 2012) (citation omitted). It is neither clear nor obvious that there was a discrepancy between the indictment and the jury instructions. The jury instructions described the third object of the conspiracy as "aiding and assisting in the preparation and filing of false tax returns," *i.e.*, a violation of 26 U.S.C. § 7206(2). The same statutory provision that criminalizes aid in filing a false 1040 also criminalizes aid in filing a false 3520. The references to Counts Ten through Nineteen thus could be understood to incorporate that instruction's description of the elements of a § 7206(2) violation rather than the conduct

3

described in that instruction. We therefore conclude that the district court did not commit plain error in its jury instructions regarding the third object of the conspiracy.

Little also presses a claim of constructive amendment of the indictment with respect to Count Eight, which charges willful failure to file an FBAR disclosing his interest in a foreign financial account, "*to wit*, at least one foreign bank, securities, and other financial account at Barclay's Bank, located in Guernsey, Channel Islands." Little contends that the government constructively amended the indictment by offering proof of a second foreign account in the United Kingdom, an account mentioned in the jury instructions. Such a discrepancy, however, does not rise to the level of constructive amendment because "to wit" clauses do not modify essential elements of the offense. *See D'Amelio*, 683 F.3d at 422.

2. Sufficiency of the Evidence of Willfulness

Several of the tax counts on which Little was convicted require that the government prove a willful state of mind. Little contends that there was insufficient evidence that he willfully failed to file tax returns, failed to file an FBAR, or assisted in the filing of fraudulent Forms 3520. "The test for sufficiency is whether, as to a given count, a 'rational trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (citation omitted). "In challenging the sufficiency of the evidence, the defendant faces an uphill battle, and bears a very heavy burden, because the evidence must be viewed in the light most favorable to the Government, with all reasonable inferences drawn in favor of the verdict." *United States v. Crowley*, 318 F.3d 401, 407 (2d Cir. 2003) (citations and internal quotation marks omitted).

Because "willfulness under the tax laws requires 'a voluntary, intentional violation of a known legal duty,'" we must first verify that there was a legal duty before we consider whether

4

sufficient evidence supports a willful violation. *United States v. Bok*, 156 F.3d 157, 165 (2d Cir. 1998) (quoting *Cheek v. United States*, 498 U.S. 192, 200–01 (1991)). First, Little was under a duty to file an annual income tax return during the charged years of 2005 to 2010. This is because he was a lawful permanent resident who had not had his resident status "revoked," "administratively or judicially determined to have been abandoned" or, after 2008, otherwise demonstrated to the Secretary that he should be "treated as a resident of a foreign country under the provisions of a tax treaty." 26 U.S.C. § 7701(b)(6); *see also* 26 U.S.C. § 7701(b)(1)(A)(i); 26 C.F.R. §§ 1.6012-1, 301.7701(b)-1(b). Second, Little was a "resident alien" or "person subject to the jurisdiction of the United States" with an obligation to file an FBAR. 31 C.F.R. § 1010.350(a), (b)(2); 31 C.F.R. § 103.24 (2007). Finally, Little had a duty not to assist in the filing of a fraudulent Form 3520; but whether the forms at issue were in fact fraudulent is a question for the jury. *See United States v. Perez*, 565 F.2d 1227, 1233–34 (2d Cir. 1977).

We conclude that substantial evidence supports the jury verdict on each of the challenged counts. In a nutshell, Little contends that he merely misunderstood the byzantine tax code. But Little is a British-trained barrister admitted to the New York Bar with a quarter-century of experience in complex international financial transactions who, for much of his life, has claimed German domicile for tax purposes. A reasonable juror could easily conclude that the failures of such a sophisticated professional to report his income to the IRS, including compensation from the Seggerman family, and to report foreign bank accounts into which his compensation was funneled, were willful acts. *See United States v. MacKenzie*, 777 F.2d 811, 818 (2d Cir. 1985) (permitting the inference of "knowledge of the law" from the "[d]efendants' backgrounds," including education). Similarly, Little's sophistication supports a conclusion that he was willfully misleading the Seggerman family's accountants when he informed them that the transfers from

5

Lixam Proviso were merely "gifts from a kind benefactor from overseas" and not distributions.

For these reasons, we conclude that the evidence of willfulness was sufficient to support the verdict.

### 3. Jury Instructions

Little did not object to the jury instructions, so we review them for plain error. *See United States v. Vilar*, 729 F.3d 62, 70 (2d Cir. 2013).

First, Little challenges the "conscious avoidance" instructions on the failure to file return counts, the failure to file FBAR count, and the conspiracy count; and second, that the district court's instructions as to willfulness erroneously converted the standard into a reasonableness standard. Conscious avoidance instructions are permissible only when the defendant mounts a defense that he lacked "some specific aspect of knowledge required for conviction" and "a rational juror may reach the conclusion beyond a reasonable doubt that the defendant was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *United States v. Coplan*, 703 F.3d 46, 89 (2d Cir. 2012) (citation and internal quotation marks omitted). Here, each predicate is met: Little defended himself by claiming ignorance of his obligations under the Tax Code and, because of Little's legal education and the relative straightforwardness of his obligations, a reasonable juror could conclude that Little was aware of a high probability that his actions were unlawful.

Second, Little challenges the willfulness instruction. He contends that the permission the district court gave the jury to "consider whether the defendant's belief was actually reasonable as a factor in deciding whether he held the belief in good faith" converted the jury charge into a reasonableness instruction. But Little misreads the instruction by ignoring the context. The preceding sentence unambiguously rejects a reasonableness standard, warning the jury that "if you

6

find that the defendant honestly believed that he was not required to file a return, even if that belief was unreasonable or irrational, then you should find him not guilty." In context, the instruction does not run contrary to the statutory mens rea. Rather, the instruction strictly limits considerations of the defendant's reasonableness (or lack thereof) to whether it raises the inference of willfulness, a "factor" expressly approved by the Supreme Court. *See Cheek*, 498 U.S. at 203–04 ("[T]he more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will . . . find that the [g]overnment has carried its burden of proving knowledge.")

For these reasons, we conclude that the jury instructions were proper.

### 4. Joinder

Little next argues that the counts of failure to file were improperly joined in the indictment. "Tax counts can properly be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged. The most direct link possible between non-tax crimes and tax fraud is that funds derived from non-tax violations either are or produce the unreported income." *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988) (cleaned up). Little's contention is that the failure-to-file counts had nothing directly to do with the broader Seggerman conspiracy.

But the indictment and record belie that contention. Little was charged with failure to file tax returns for the years in which he received payments from the Seggermans for his role in the scheme. Moreover, Little received such income, in part, through the bank account for which he failed to file an FBAR. We therefore conclude that the charges were properly joined and the district court appropriately exercised its discretion when it denied Little's motion to sever.

### 5. Restitution Order

Finally, the district court did err in its restitution order. For convictions of offenses defined

in Title 26 of the United States Code, courts lack the statutory authority to order restitution that begins immediately upon judgment. *See United States v. Adams*, 955 F.3d 238, 250 (2d Cir. 2020) (citing 18 U.S.C. §§ 3663(a), 3663A). Hence, the $134,449.71 ordered as restitution for Little's failure to file tax returns in violation of 26 U.S.C. § 7203 is *ultra vires*. While we have sometimes, in similar cases, exercised our power to modify a judgment to impose restitution as a condition of supervised release, *see Adams*, 955 F.3d at 250–51, we decline to do so here. The district court calculated Little's restitution obligation by applying the 20% rate provided for in Section 2T1.1(c)(2)(a) of the Sentencing Guidelines to Little's earnings between 2005 and 2010. Since then, however, the governments of the United States and the United Kingdom have apparently agreed that the United States may tax Little's business income only up to September 2008. Accordingly, we conclude that the proper course under these circumstances is to vacate that part of the restitution order relating to Little's failure to file tax returns and remand this case for the district court to assess in the first instance what effect, if any, this agreement might have on the amount of restitution owed to the United States. The balance of the restitution order—the $4,218,140.00 for which Little is one of the jointly and severally liable coconspirators—is affirmed.[1]

We have considered the remainder of Little's arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of conviction, except for the order of

---

[1] We reject Little's argument that this restitution obligation must be apportioned among the coconspirators. The decision whether to apportion or hold the coconspirators jointly and severally liable is committed to the discretion of the trial court. *See United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004) (citing 18 U.S.C. § 3664(h)).

restitution, which we **AFFIRM IN PART** and **VACATE IN PART** and **REMAND** for further proceedings.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court