*United States v. Perez*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

<u>**SUMMARY ORDER**</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of December, two thousand twenty-three.

PRESENT:

> JOSÉ A. CABRANES,
> RICHARD J. SULLIVAN,
> MYRNA PÉREZ,
> > *Circuit Judges.*

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                            No. 22-1547

HECTOR PEREZ,

> *Defendant-Appellant*.

---

For Defendant-Appellant:    KENDRA L. HUTCHINSON, Of Counsel, Federal Defenders of New York, Appeals Bureau, New York, NY.

For Appellee:    SHANNON C. JONES (Susan Corkery, *on the brief*), Assistant United States Attorneys, *for* Breon Peace, United States Attorney for the Eastern District of New York, Brooklyn, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Hector Perez appeals from a judgment following his guilty plea to conspiracy to engage in securities fraud, in violation of 18 U.S.C. § 371. Between April 1 and June 5, 2015, Perez and a coconspirator, Joshua Turney, executed over 4,500 securities trades without their customers' authorizations in order to meet commission targets set by their employer Global Arena Capital Corporation ("Global"). The district court sentenced Perez to a term of two years' probation, and ordered him to pay $137,275 in forfeiture and $5,295,868.12 in restitution. On appeal, Perez argues that the district court abused its discretion by (1) issuing a restitution order equaling the full loss amount caused by the unauthorized trades

made by both Perez and Turney and (2) not apportioning restitution liability among the defendants. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review restitution orders for abuse of discretion. *United States v. Gushlak*, 728 F.3d 184, 190 (2d Cir. 2013). A district court abuses its discretion when "a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006) (internal quotation marks omitted). We review *de novo* "arguments [that] raise questions of law." *Gushlak*, 728 F.3d at 191.

Under the Mandatory Victims Restitution Act (the "MVRA"), 18 U.S.C. § 3663A, restitution is required where "(a) the offense was 'committed by fraud or deceit' and (b) 'an identifiable victim . . . has suffered a physical injury or pecuniary loss.'" *United States v. Archer*, 671 F.3d 149, 169 (2d Cir. 2011) (quoting 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii), (c)(1)(B)). In determining whether a victim is entitled to restitution under the statute, we must "identify the offense of conviction and . . . ascertain whether the putative victim was directly and proximately

3

harmed by the defendant's commission of that offense." *United States v. Goodrich*, 12 F.4th 219, 228 (2d Cir. 2021) (internal quotation marks omitted).

Perez first contends that the district court abused its discretion by ordering him to pay restitution for the entire loss amount, even though he carried out only a portion of the unauthorized trades executed during the conspiracy. To identify the "offense of conviction" for restitution purposes, courts look to "the defendant's criminal conduct in the course of the . . . conspiracy," 18 U.S.C. § 3663A(a)(2), and "the specific conduct that is the basis of the offense of conviction," *United States v. Vilar*, 729 F.3d 62, 97 (2d Cir. 2013) (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)). Where, as here, a defendant has pleaded guilty, courts consult the "materials supporting the plea," including the charging instrument, plea agreement, and allocution statement. *Goodrich*, 12 F.4th at 230.

Here, there is no doubt that Perez pleaded guilty to *conspiracy* to commit securities fraud. Indeed, the Information alleged that Perez – "together with others" – "engaged in a scheme to defraud customers of Global" and executed "approximately 4,500 trades . . . in approximately 360 customer accounts." App'x at 10–11. The Information also stated that these unauthorized trades "generated over $2.44 million in commissions and fees for Global," which were then

4

distributed to Perez, Turney, and others. *Id.* at 11. Similarly, Perez acknowledged in his allocution statement that he, "together with others[] at Global[,] made unauthorized trade[s] of securities in Global's customers' accounts." *Id.* at 60. Moreover, Perez's cooperation agreement stated that his conviction "carrie[d] . . . statutory penalties" including mandatory restitution "in the full amount of each victim's losses as determined by the [c]ourt," *id.* at 16–17, and Perez confirmed at the plea hearing his understanding that there would be restitution in the "full amount of each victim's loss," *id.* at 51–52. Based on this "record of the guilty plea proceedings," we have no trouble concluding that the "nature and scope of the 'offense of conviction'" encompasses all of the fraudulent trades that Perez and Turney submitted to generate commissions for themselves and Global. *Goodrich*, 12 F.4th at 230.

Perez next argues that by ordering restitution in the full loss amount, the district court abused its discretion because Perez's conduct did not directly and proximately cause the losses Global victims suffered as a result of Turney's trading. The MVRA states that restitution is mandatory when an offense of conviction "directly and proximately harmed" a victim, 18 U.S.C. § 3663A(a)(2), which "[c]ourts have interpreted . . . to impose cause-in-fact and

5

proximate[-]cause requirements," *Goodrich*, 12 F.4th at 229–30 (quoting *Robers v.*

*United States*, 572 U.S. 639, 645 (2014)) (citing *United States v. Marino*, 654 F.3d 310,

323 (2d Cir. 2011)). To meet the cause-in-fact requirement, the defendant's conduct

must have been a "but[-]for" cause or a necessary factor in bringing about the

victim's harm. *Marino*, 654 F.3d at 322. To satisfy the proximate-cause

requirement, "the harm alleged [must] ha[ve] [had] a sufficiently close connection

to the conduct" and must have been "'foreseeable' to [the] defendant." *Goodrich*,

12 F.4th at 229 (quoting *Robers*, 572 U.S. at 645).

At sentencing, Perez did not dispute the facts surrounding his involvement

in the conspiracy at Global. In particular, Perez agreed that (1) Global's owner

encouraged Turney and Perez to increase their trade volume; (2) Turney and Perez

"discussed how to go about doing that together, which involved placing trades in

their customers' accounts without their [customers'] consent"; (3) "Turney

arranged to have Turney's assistant show Perez's assistant ways to help increase

Perez's trading activity"; (4) Turney and Perez "offered support and

encouragement" to one another while placing unauthorized trades; (5) Global

allowed Turney and Perez to both trade on accounts using the "rep code" of other

registered representatives; and (6) when customers complained about

6

unauthorized trading, Global transferred Perez's customers to the "rep code" of another registered broker, which Turney was also using. App'x at 87. Indeed, Perez himself concedes that "[Global's owner] directed [him] to meet the aggressive commission targets by 'emulating Turney.'" Perez Br. at 24 (quoting App'x at 74). On this record, it is hard to conceive how Perez "could [not] have reasonably foreseen[] that his participation in the . . . scheme would result in the harm to [the other Global clients]." *Goodrich*, 12 F.4th at 232.

Additionally, we are persuaded that Perez's conduct was a direct cause of the losses resulting from Turney's unauthorized trades for the simple reason that Perez "knew of and should have revealed the . . . fraud, but did not," *Marino*, 654 F.3d at 322, and that he "took affirmative steps to conceal [the fraud]," *id.* at 323, by using different "rep codes" when customers began complaining about unauthorized trades, App'x at 87. We therefore reject the proposition that "[Perez's] conduct in concealing the fraud was not the direct cause that the MVRA requires" merely because "he was not directly engaged in the operational activity of [Turney's trades]." *Marino*, 654 F.3d at 322.

For all of these reasons, we conclude that the district court did not err in ordering Perez to pay restitution for the full loss amount. The law of this Circuit

is clear that "[w]here (as here) a conspiracy has multiple victims, the [MVRA] allow[s] the sentencing court to order a single defendant to pay restitution for all losses caused by the actions of that defendant *as well as by the actions of that defendant's co-conspirators*."  *United States v. Boyd*, 222 F.3d 47, 50 (2d Cir. 2000) (emphasis added).

Finally, Perez argues that the district court abused its discretion by declining to apportion liability for purposes of calculating his restitution.  Under the MVRA, "[i]f [a] court finds that more than [one] defendant has contributed to the loss of a victim, the court *may* make each defendant liable for payment of the full amount of restitution or *may* apportion liability among the defendants to reflect the level of contribution to the victim's loss and [the] economic circumstances of each defendant."  18 U.S.C. § 3664(h) (emphasis added).  "[T]he decision whether to apportion restitution among defendants is a discretionary one."  *United States v. Nuccie*, 364 F.3d 419, 422 (2d Cir. 2004).

Here, the district court took stock of the fact that "[t]here[] [was] no indication that [Perez] could afford [both] to pay a fine[] and comply with the orders of forfeiture and restitution."  App'x at 129.  The district court also acknowledged Perez's contention that the "restitution number should be

8

$1,128,036.97" based on the "unauthorized trades . . . performed by . . . Perez personally." *Id.* at 130. Nonetheless, given Perez's active role in the conspiracy, the fact that he himself executed more than one thousand fraudulent trades that resulted in customer losses of over $1.1 million, and his affirmative steps to conceal the fraud by providing ongoing assistance to Turney and Global over the span of several months, the district court concluded that "both [Perez] and . . . Turney [were] equally responsible to make good on the losses of the clients of Global in the amount of $5,295,868.12." *Id.* at 129. Based on the record, we cannot say that the district court abused its discretion by declining to apportion liability in this case.

We have considered Perez's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9